**CONFORMED**

FILED

2008 FEB 22  PM 2: 07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY: _____

1  O'DONNELL & ASSOCIATES P.C.
   PIERCE O'DONNELL (State Bar No. 081298)
2  GREGORY J. MANN (State Bar No. 200578)
   ROBERT M. PARTAIN (State Bar No. 221477)
3  550 South Hope Street, Suite 1000
   Los Angeles, CA 90071
4  Telephone: (213) 347-0290
   Fax: (213) 347-0299
5
6  Attorneys for DAVID FRANK
   MURPHY, DAVID KUO and the Class
7
8
9               UNITED STATES DISTRICT COURT
10             CENTRAL DISTRICT OF CALIFORNIA
11
12  DAVID F. MURPHY, an individual,          CASE NO. CV08-01214 R PJW
    DAVID KUO, an individual, and on
13  behalf of all others similarly situated,
14                                           CLASS ACTION COMPLAINT
              Plaintiffs,                     FOR VIOLATIONS OF THE
15                                           SHERMAN ANTITRUST ACT
         v.                                  15 U.S.C. § 1
16
17  AIR NEW ZEALAND,                         JURY TRIAL DEMANDED
    ALL NIPPON AIRWAYS,
18  CATHAY PACIFIC AIRWAYS,
    CHINA AIRLINES,
19  EVA AIRLINES,
    JAPAN AIRLINES INTERNATIONAL,
20  MALAYSIA AIRLINES,
    NORTHWEST AIRLINES,
21  QANTAS AIRLINES,
    SINGAPORE AIRLINES,
22  THAI AIRLINES,
    UNITED AIRLINES,
23
              Defendants.
24
25
26
27
28

_____
COMPLAINT
1

1    Pursuant to the Federal Rules of Civil Procedure, Plaintiffs DAVID FRANK
2    MURPHY and DAVID KUO ("Plaintiffs"), on behalf of themselves and all others
3    similarly situated, hereby bring this action for treble damages and injunctive relief
4    under the federal antitrust laws of the United States, Section 1 of the Sherman
5    Antitrust Act of 1890, 15 U.S.C. § 1 ("Sherman Act") and Sections 4 and 26 of the
6    Clayton Antitrust Act of 1914, 15 U.S.C. §§ 15, 26 ("Clayton Act") against
7    Defendants. Plaintiffs complain and allege upon information and belief except as
8    to those paragraphs applicable to the named Plaintiffs, which are based on personal
9    knowledge, as follows:

## NATURE OF THE ACTION

11    1.    This action arises from a global conspiracy among certain airlines to
12    fix, raise, maintain, and/or stabilize prices for long haul passenger transpacific
13    flights to and from the United States ("Passenger Air Transportation"), and for
14    fixed fuel surcharges on this transportation ("Fuel Surcharges"). Fuel surcharges
15    are fees charged to passengers by airlines purportedly to compensate the airlines
16    for increased fuel costs.

17    2.    Plaintiffs, on behalf of all persons and entities who purchased
18    Passenger Air Transportation to and from the United States from any of the
19    Defendants and their co-conspirators, or any predecessor, subsidiary, or affiliate of
20    each, at any time during the period 2004 through August 2007 ("Class Period"),
21    bring this action to recover treble damages and injunctive relief for violations of
22    the United States antitrust laws.

23    3.    At all relevant times herein, Defendants were airlines that conducted
24    and sold Passenger Air Transportation, and charged fixed Fuel Surcharges on that
25    transport, to airline passengers in the United States and throughout the world,
26    including but not limited to flights to and from Los Angeles and to and from San
27    Francisco, California. Los Angeles International Airport ("LAX") and San
28    Francisco International Airport ("SFO") are considered the international U.S.

1    gateways to Asian and Pacific countries.  The U.S. Department of Transportation
2    reported that in 2005 LAX and SFO were ranked in the top U.S. passenger
3    gateways to the world in scheduled passenger service.  That year LAX and SFO
4    had 24.6 million gateway passengers, with the foreign share of the passengers at an
5    average of 67%.

6         4.    As further alleged herein, during at least the Class Period, Defendants
7    agreed, combined and/or conspired with each other to fix, raise, maintain, and/or
8    stabilize the prices of Passenger Air Transportation and Fuel Surcharges thereon.
9    As a result of Defendants' unlawful conduct and conspiracy, Plaintiffs and the
10   other members of the Class paid artificially high prices for Passenger Air
11   Transportation and Fuel Surcharges thereon, and have been damaged accordingly.

12                        **JURISDICTION AND VENUE**

13        5.    This Complaint is brought under Sections 4 and 16 of the Clayton
14   Act, 15 U.S.C. §§ 15 and 26, to obtain injunctive relief and to recover treble
15   damages and the costs of this suit, including reasonable attorneys' fees, against
16   Defendants for the injuries sustained by Plaintiffs and the members of the Class by
17   reason of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

18        6.    This Court has jurisdiction over this action pursuant to 28
19   U.S.C. §§ 1331 and 1337, and Sections 4 and 16 of the Clayton Act, 15
20   U.S.C. §§ 15 and 26.

21        7.    This Court has *in personam* jurisdiction over each of the Defendants
22   because each was engaged in an illegal price-fixing scheme and conspiracy that
23   was directed at and/or caused injury to persons and entities residing in, located in,
24   or doing business in the Central District of California and throughout the United
25   States.

26        8.    Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and
27   28 U.S.C. § 1391(b), (c), and (d) because during the Class Period many of the
28   Defendants resided, transacted business, were found, or had agents in this district,

1  and because a substantial part of the events giving rise to Plaintiffs' claims

2  occurred, and a substantial portion of the affected trade and commerce described

3  below has been carried out, in this district.

4  **PARTIES**

5  **PLAINTIFFS**

6      9.    Plaintiff DAVID FRANK MURPHY is a citizen of the State of

7  California, Los Angeles County. He purchased Passenger Air Transportation and

8  paid Fuel Surcharges thereon from Defendants Thai Airways, Singapore Airlines,

9  and United Airlines, during the class period and has suffered pecuniary injury as a

10  result of the antitrust violations alleged herein.

11      10.    Plaintiff DAVID KUO is a citizen of the State of California, Los

12  Angeles County. He purchased Passenger Air Transportation and paid Fuel

13  Surcharges thereon from Defendants China Airways during the class period and

14  has suffered pecuniary injury as a result of the antitrust violations alleged herein.

15  **DEFENDANTS**

16      11.    Defendant AIR NEW ZEALAND is a New Zealand company with its

17  principal place of business at Quay Tower, 29 Customs St West, Auckland, 1020,

18  New Zealand. Air New Zealand conducts Passenger Air Transportation

19  throughout the world, including into the United States and especially California.

20      12.    Defendant ALL NIPPON AIRWAYS is a Japanese company with its

21  principal place of business at Shidome-City Center, 1-5-2, Higashi-Shimbashi,

22  Minato-ku, Tokyo 105-7133, Japan. All Nippon Airways conducts Passenger Air

23  Transportation throughout the world, including into the United States and

24  especially California.

25      13.    Defendant CATHAY PACIFIC AIRWAYS is a Hong Kong-based

26  company with its principal place of business at 9 Connaught Road, Central Swirel

27  Housepox Box 1 GPO, Hong Kong, K3. Cathay Pacific Airways conducts

28

COMPLAINT
4

1  Passenger Air Transportation throughout the world, including direct transpacific
2  flights into the United States, especially California.

3      14.    Defendant CHINA AIRLINES is a Taiwanese company with its
4  principal place of business at 131 Nanking E Rd., Section 3, Taipei, Taiwan.
5  China Airlines conducts Passenger Air Transportation throughout the world,
6  including direct transpacific flights into the United States, especially California.

7      15.    Defendant EVA AIRWAYS is a Taiwanese company with its
8  principal place of business at 16F.-1, No. 207, Fusing Road, Taoyuan City,
9  Taoyuan County, Taiwan.  EVA Airways conducts Passenger Air Transportation
10 throughout the world, including direct transpacific flights into the United States,
11 especially California.

12     16.    Defendant JAPAN AIRLINES INTERNATIONAL is a Japanese
13 company with its principal place of business at 4-11, Higashi-Shinagawa 2-
14 chrome, Shinagawa-Ku, Tokyo 140-8605, Japan.  Japan Airlines International
15 conducts Passenger Air Transportation throughout the world, including into the
16 United States, especially California.

17     17.    Defendant MALAYSIA AIRLINES is a Malaysian corporation with
18 its principal place of business at MAS Complex A, Sultan Abdul Azia Shah
19 Airport, 47200 Suband, Selangor Darui Ehsan, Malaysia.  Malaysia Airlines
20 conducts Passenger Air Transportation throughout the world, including into the
21 United States, especially California.

22     18.    Defendant NORTHWEST AIRLINES is a Delaware corporation with
23 its principal place of business at 2700 Lone Oak Parkway, Eagan, Minnesota
24 55121.  Northwest Airlines conducts Passenger Air Transportation throughout the
25 world, including into the United States, especially California.

26     19.    Defendant QANTAS AIRWAYS is an Australian company with its
27 principal place of business at 203 Coward Street, Qantas Centre, Mascot NSW
28

COMPLAINT
5

1  2020 C3.  Qantas Airways conducts Passenger Air Transportation throughout the

2  world, including into the United States, especially California.

3       20.    Defendant SINGAPORE AIRLINES is a Singapore company with its

4  principal place of business at Airline House, 25 Airline Road, 819829 Singapore.

5  Singapore Airlines conducts Passenger Air Transportation throughout the world,

6  including direct transpacific flights into the United States, especially California.

7       21.    Defendant THAI AIRWAYS is a Thailand company with its principal

8  place of business at 89 Vibhavadi-Rangsit Road, Bangkok, Thailand 10900.  Thai

9  Airways conducts Passenger Air Transportation throughout the world, including

10  direct transpacific flights into the United States, especially California.

11       22.    Defendant UNITED AIRLINES is a Delaware corporation with its

12  principal place of business at 77 W. Wacker, Chicago, Illinois 60601.  United

13  Airlines is one of the largest passenger airlines in the world with more than 3,600

14  flights a day to more than two hundred destinations.  United Airlines conducts

15  Passenger Air Transportation throughout the world, including into the United

16  States, especially California.

17  **UNNAMED CO-CONSPIRATORS**

18       23.    At all relevant times, other airlines, trade groups, or other entities,

19  willingly conspired with Defendants in their unlawful restraint of trade.  All

20  averments herein against named Defendants are also averred against these

21  unnamed co-conspirators as though set forth at length herein.

22  **AGENTS**

23       24.    The acts alleged to have been taken by Defendants were authorized,

24  ordered or taken by their directors, officers, agents, employees, or representatives

25  while actively engaged in the management of each of the Defendants' affairs.

26       **TRADE AND COMMERCE**

27       25.    Throughout the Class Period, there was a continuous and

28  uninterrupted flow of Passenger Air Transportation in international commerce

1  throughout the United States and especially into and out of Los Angeles and San

2  Francisco.  Defendants' unlawful activities, as described herein, took place within

3  the flow of commerce to Passenger Flight customers throughout the world, and had

4  a direct, substantial, and reasonably foreseeable effect upon interstate and

5  international commerce in the United States.

## PLAINTIFFS AND THE CLASS SUFFERED INJURY
## THROUGH COLLUSIVE PRICE INCREASES AND SURCHARGES

8      26.    Defendants controlled a vast majority of the Passenger Flight services

9  during the Class Period as a result of their dominant combined market share.  Thus,

10  Passenger Flight customers were unable to shop for Passenger Air Transportation

11  from other carriers during that period because of the lack of competition, which

12  allowed Defendants to reap enormous profits from the Fuel Surcharges.

13      27.    In addition, Defendants and other carriers often treated Fuel

14  Surcharges akin to a tax or other surcharge, such as an airport facility charge or a

15  government mandated September 11 security charge.  As such, Fuel Surcharges

16  were not always advertised as part of Defendants' fares, and were added to the

17  base fare as part of the purchase transaction.

18      28.    Because surcharges generally are designed to compensate for

19  increased external costs, they should bear a relatively constant relationship to

20  external cost levels.  Thus, in a competitive market, Fuel Surcharges should rise

21  and fall at relatively constant ratios to the associated jet fuel costs.  Since their

22  inception in 2004, however, the ratio of Defendants' Surcharges to external costs

23  has increased steadily.  The Fuel Surcharges bore no relationship to Defendants'

24  actual fuel costs or fuel cost increases.

25      29.    The ratio of Defendants' profits to external costs was therefore quite

26  high due to the concerted implementation and maintenance of the agreed-upon

27  Passenger Air Transportation and Fuel Surcharge price levels.  Thus, despite

28  increased fuel costs during the Class Period, Defendants' Surcharges were

1  responsible for outstanding *profit growth* for Defendants beyond the record fuel
2  costs.

3  ## CLASS ACTION ALLEGATIONS

4      30.    Plaintiffs bring this action on their own behalf and as a class action
5  pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the
6  following Class:

7          All individuals or entities (excluding governmental
           entities, Defendants and their parents, predecessors,
8          subsidiaries, affiliates, and co-conspirators) who
           purchased passenger air transportation, for long haul
9          transpacific flights and who paid a fuel surcharge on their
           tickets from any of the Defendants and their co-
10         conspirators or any predecessor, subsidiary, or affiliate of
           each, at any time during the period 2004 through August
11         2007.

12     31.    Because such information is in the exclusive control of Defendants,
13  Plaintiffs do not know the exact number of Class members.  Due to the nature of
14  the trade and commerce involved, however, Plaintiffs believe that Class members
15  number at least in the thousands and are sufficiently numerous and geographically
16  dispersed throughout the United States and the world so that joinder of all Class
17  members is impracticable.  It is estimated that there were more than 15 million
18  passengers traveling to the Pacific out of California in 2006 alone.

19     32.    There are questions of law or fact common to the Class including:
20         a.  Whether Defendants engaged in a combination or conspiracy
21             among themselves to fix, raise, maintain, and/or stabilize
22             Passenger Air Transportation and Surcharge prices charged
23             effecting commerce in the United States and throughout the world;
24         b.  The duration of the conspiracy alleged in this Complaint and the
25             nature and character of the acts performed by Defendants in
26             furtherance of the conspiracy;
27         c.  Whether the alleged conspiracy violated Section 1 of the Sherman
28             Act;

1        d.  Whether the conduct of Defendants, as alleged in this Complaint,
2            caused injury to the businesses or property of Plaintiffs and the
3            other members of the Class;
4        e.  The effect of Defendants' conspiracy on the Passenger Air
5            Transportation and Surcharge prices charged in the United States
6            and throughout the world during the Class Period; and
7        f.  The appropriate measure of damages sustained by Plaintiffs and
8            other members of the Class.

9    33.   Plaintiffs are members of the Class. Plaintiffs' claims are typical of
10   the claims of the Class members. Plaintiffs will fairly and adequately protect the
11   interests of the Class. Plaintiffs purchased Passenger Air Transportation and
12   Surcharges from one or more Defendants, and their interests are coincident with
13   and not antagonistic to those of other members of the Class. Plaintiffs are
14   represented by counsel competent and experienced in the prosecution of antitrust
15   and class action litigation.

16   34.   The questions of law and fact common to the members of the Class
17   predominate over any questions affecting only individual members.

18   35.   A class action is superior to other methods for the fair and efficient
19   adjudication of this controversy. Treatment as a class action will permit a large
20   number of similarly situated persons to adjudicate their common claims in a single
21   forum simultaneously, efficiently, and without the duplication of effort and
22   expense that numerous individual actions would engender.

23   36.   Class treatment will also permit the adjudication of relatively small
24   claims by many Class members who otherwise could not afford to litigate an
25   antitrust claim such as is asserted in this Complaint.

26   37.   This action presents no difficulties in management that would
27   preclude maintenance as a class action. Finally, the Class is readily definable and
28

COMPLAINT
9

1  is one for which records of the names and addresses of the members of the Class

2  exist in the files of Defendants.

3  ## DEFENDANTS AND THE PASSENGER FLIGHT MARKET

4     38.    Each Defendant possesses significant market share on their routes of

5  travel. The principal competitors for the Defendants in the transpacific long haul

6  Passenger Air Transportation market are therefore one another.

7     39.    Passenger Air Transportation is a commodity product that is fungible

8  in the sense that Passenger Air Transportation provided by any one airline is

9  readily substitutable for the Passenger Air Transportation provided by any other

10  airline.

11     40.    Passenger Air Transportation is a homogenous service sold by

12  airlines, including Defendants, to airline customers, including Plaintiffs and the

13  members of the Class, primarily based on price.

14     41.    The Passenger Air Transportation market in the United States and

15  worldwide is highly concentrated, and there exists substantial barriers to entry in

16  this market; both factors facilitate the implementation and maintenance of a

17  horizontal price-fixing cartel such as that perpetrated by Defendants and alleged

18  herein.

19  ## DEFENDANTS CONCERTED FUEL SURCHARGES

20     42.    Generally, surcharges are a feature of the global air transportation

21  market, in which airlines charge extra fees to their customers, above and beyond

22  basic flight rate charges, with the intent of defraying certain external costs of the

23  carriers.

24     43.    Beginning in 2004, Defendants agreed to act in concert with one

25  another in demanding the Surcharges to defray fuel costs and agreeing when and

26  how much to increase the Surcharges to their Passenger Flight customers.

27     44.    Defendants were aware that their imposition of Fuel Surcharges and

28  other surcharges would not be successful if their supposed competitors did not join

COMPLAINT

10

them; otherwise, customers would be free to seek out lower prices. For this reason, Defendants entered into agreements to raise surcharges at the same times and in the same amounts.

45.    But for Defendants' Passenger Air Transportation conduct, Defendants would have been unable to perpetrate the extent to which they increased the prices of their Fuel Surcharges.

46.    The collusion of Japan Airlines International and All Nippon Airways ("ANA") is representative of the behavior of the other Defendants. Japan Airlines International and ANA agreed to raise and lower fares on nearly always the same dates and were in lockstep on surcharges for transpacific fares:

| | |
|---|---|
| **June 8, 2004**: ANA files a notice with the Japanese government to raise IATA international fares – in the wake of increased fuel prices – to and from Japan, effective **July 1, 2004**. This was a 5% hike with an exception for North America economy fares, but not business class. | **June 8, 2004**: Japan Airlines files a notice with the Japanese government to raise international fares – in the wake of increased fuel prices – to and from Japan, effective **July 1, 2004**. This was a 5% hike with an exception for North American economy fares, but not business class. |
| **January 5, 2005**: ANA announces it will add fuel surcharges on international fares on **February 1, 2005**. The surcharges for transpacific flights were 2,500 yen. | **January 20, 2005**: Japan Airlines announces it will add fuel surcharges on international fares on **February 1, 2005**. The surcharges for transpacific flights were 2,500 yen. |
| **June 3, 2005**: Japan Airlines files a notice with the Japanese government to | **June 7, 2005**: ANA files a notice with the Japanese government to raise its |

| | |
|---|---|
| raise its international fuel surcharge effective **July 1, 2005.** | international fuel surcharge effective **July 7, 2005.** |
| **January 16, 2006:** Japan Airlines files a notice with the Japanese government to raise its international fuel charge effective **March 1, 2006.** | **January 23, 2006:** ANA files a notice with the Japanese government to raise its international fuel charge effective **March 1, 2006.** |
| **August 17, 2006:** Japan Airlines files a notice with the Japanese government to raise its international fuel surcharge, effective **October 1, 2006** from 8,000 yen to 13,600 yen ($66 to $113). | **August 31, 2006:** ANA files a notice with the Japanese government to raise its international fuel surcharge, effective **October 15, 2006** from 8,000 yen to 13,600 yen ($66 to $113). |
| **November 16, 2006:** Japan Airlines files a notice with the Japanese government to reduce the fuel surcharge on international passenger fares effective **January 1, 2007** lowering the surcharge from 13,600 yen to 13,000 yen ($113 to $108). | **November 16, 2006:** ANA files a notice with the Japanese government to reduce the fuel surcharge on international passenger fares effective **January 1, 2007** lowering the surcharge from 13,600 yen to 13,000 yen ($113 to $108). |
| **March 19, 2007:** Japan Airlines files a notice with the Japanese government to reduce the fuel surcharge on international passenger fares effective **May 1, 2007** to 11,000 yen or $91. | **March 20, 2007:** ANA files a notice with the Japanese government to reduce the fuel surcharge on international passenger fares effective **May 1, 2007** to 11,000 yen or $91. |

| | |
|---|---|
| **May 14, 2007:** Japan Airlines files a notice with the Japanese government to raise the fuel surcharge on international passenger fares effective **July 1, 2007** from 11,000 yen or $91 to 12,000 yen or $100. | **May 25, 2007:** ANA files a notice with the Japanese government to raise the fuel surcharge on international passenger fares effective **July 10, 2007** from 11,000 yen or $91 to 12,000 yen or $100. |
| **August 15, 2007:** Japan Airlines files a notice with the Japanese government to raise the fuel surcharge on international passenger fairs effective **October 1, 2007** from 12,000 yen or $100 to 13,000 yen or $108. | **August 20, 2007:** ANA files a notice with the Japanese government to raise the fuel surcharge on international passenger fairs effective **October 1, 2007** from 12,000 yen or $100 to 13,000 yen or $108 |

## CARTEL-LIKE TRADE ORGANIZATIONS

47.     Defendants' executives, as well as other air carriers' executives, met formally or informally over the years at various trade meetings or meetings of trade associations, such as the International Air Transport Association, the Association of Asian Pacific Airlines, oneworld, Star Alliance and SkyTeam Alliance.  At one or more of these meetings, Defendants conspired to artificially inflate Fuel Surcharges on international passenger air transportation.

48.     One of the keys to the conspiracy is the 42-year old Association of Asia Pacific Airlines ("AAPA").  The 17-member trade association, based in Kuala Lumpur, Malaysia, is the most significant group representing Asia/Pacific carriers. The AAPA boasts that its "member airlines carry 285 million passengers and 10 million tons of cargo representing approximately one-fifth of global passenger

1    traffic and one-third of global air cargo traffic respectively." Ten of the defendants
2    are members of the AAPA.

3        49.    The primary purpose of the AAPA is to serve as a forum for
4    members' views on issues of common interest and to foster close cooperation.
5    According to the organization:

> AAPA speaks with a common voice on behalf of the
> Asia Pacific carriers and puts forward Asian perspectives
> when dealing with governments, aircraft manufacturers,
> airport authorities and other organizations on industry
> issues. The activities of the Association cover every
> aspect of civil aviation where the airlines feel they can
> work together for mutual benefit. In addition, AAPA
> retains access to specialized legal and aviation
> consultants in Brussels and Washington, a reflection of
> the significant impact which the profusion of U.S. and
> E.U. regulatory developments have on all international
> carriers including Asia Pacific airlines.

12        50.    The AAPA was formed during a meeting of Asian airline executives
13    in 1965 to discuss regional cooperation. The following year, Philippine Airlines,
14    China Airlines, Korean Airlines and Malaysian Airlines officially formed the
15    Orient Airlines Research Bureau. The group evolved into the Orient Airlines
16    Association and in 1996 changed its name to the Association of Asia Pacific
17    Airlines.

18        51.    Another key to the conspiracy is the Geneva-based International Air
19    Transport Association ("IATA"). All the Defendants are members of the IATA,
20    which was founded in 1945 in Havana, Cuba. The IATA represents more than 240
21    airlines comprising 94% of scheduled international air traffic. It describes itself as
22    "the prime vehicle for inter-airline cooperation." It was an agreement reached at
23    an IATA meeting on May 28, 2004 that played a role in triggering the fuel
24    Surcharge conspiracy.

25        52.    Alliance memberships by airline:

26    **Air New Zealand**

27        •   Member of the Association of Asia Pacific Airlines
28        •   Member of the Star Alliance

1    • Member of the International Air Transport Association

2    **All Nippon Airways**

3    • Member of the Association of Asia Pacific Airlines

4    • Member of the Star Alliance

5    • Member of the International Air Transport Association

6    **American Airlines**

7    • Member of oneworld

8    • Member of the International Air Transport Association

9    **Cathay Pacific Airways**

10   • Member of the Association of Asia Pacific Airlines

11   • Member of oneworld

12   • Member of the International Air Transport Association

13   **China Airlines**

14   • Member of the Association of Asia Pacific Airlines

15   • Member of the International Air Transport Association

16   **EVA Airlines**

17   • Member of the Association of Asia Pacific Airlines

18   • Member of the International Air Transport Association

19   **Japan Airlines International**

20   • Member of the Association of Asia Pacific Airlines

21   • Member of oneworld

22   • Member of the International Air Transport Association

23   **Malaysia Airlines**

24   • Member of the Association of Asia Pacific Airlines

25   • Member of the International Air Transport Association

26   **Northwest Airlines**

27   • Member of the SkyTeam Alliance

28   • Member of the International Air Transport Association

**Qantas Airways**

- Member of the Association of Asia Pacific Airlines
- Member of oneworld
- Member of the International Air Transport Association

**Singapore Airlines**

- Member of the Association of Asia Pacific Airlines
- Member of the Star Alliance
- Member of the International Air Transport Association

**Thai Airways**

- Member of the Association of Asia Pacific Airlines
- Member of the Star Alliance
- Member of the International Air Transport Association

**United Airlines**

- Member of the Star Alliance
- Member of the International Air Transport Association

## CODE SHARING BUSINESS PARTNERSHIPS

53.    In addition to the four different alliances/trade groups, various Defendants are in effect business partners with each other through what is called code sharing.  Code sharing is a business term that was first originated in 1990 when Qantas Airways and American Airlines combined services between an array of U.S. and Australian cities.  Although code sharing is a legal business arrangement, it provides a mechanism to conduct illegal activity.

54.    A code share is part of a "cooperative services" agreement between the two carriers.  It refers to the practice where a flight operated by an airline is jointly marketed as a flight for one or more other airlines.  Most major airlines today have code sharing partnerships with other airlines.  "Code" refers to the identifier used in flight schedule, generally the 2-character International Air Transport Association airline designator code and flight number.  For example,

1  YY123, flight 123 operated by the airline YY, could be sold by airline ZZ as

2  ZZ456.  It is a business partnership that allows airlines to earn revenue by selling

3  tickets on a partner's flight.

4      55.    According to the U.S. Department of Transportation and Defendants,

5  the following are the code sharing partnerships of the Defendants listed

6  alphabetically:

7          Air New Zealand / EVA Airways

8          Air New Zealand / Qantas (Tasman route)

9          Air New Zealand / Japan Airlines International

10         Air New Zealand / Northwest Airlines

11         Air New Zealand / Singapore Airlines

12         Air New Zealand / Thai Airways

13         Air New Zealand / United Airlines

14         All Nippon Airways / Asiana Airlines

15         All Nippon Airways / EVA Airways

16         All Nippon Airways / Malaysia Airlines

17         All Nippon Airways / Singapore Airlines

18         All Nippon Airways / United Airlines

19         China Airlines / American Airlines

20         Cathay Pacific Airways / American Airlines

21         Cathay Pacific Airways / Japan Airlines International

22         China Airlines / Thai Airways

23         EVA Airways / Air New Zealand

24         EVA Airways / American Airlines

25         EVA Airways / All Nippon Airways

26         EVA Airways / Qantas

27         EVA Air / American Airlines

28         Japan Airlines International / Air New Zealand

---

COMPLAINT

17

1    Japan Airlines International / American Airlines

2    Japan Airlines International / Cathay Pacific

3    Japan Airlines International / Korean Air

4    Japan Airlines International / Northwest Airlines

5    Japan Airlines International / Qantas Airlines

6    Japan Airlines International / Singapore Airlines

7    Japan Airlines International / Thai Airways

8    Malaysia Airlines / All Nippon Airways

9    Malaysia Airlines / Thai Airways

10    Northwest Airlines / Air New Zealand

11    Northwest Airlines / Asiana Airlines

12    Northwest Airlines / Japan Airlines International

13    Northwest Airlines / Korean Air

14    Qantas Airways / Air New Zealand

15    Qantas Airways / American Airlines

16    Qantas Airways / EVA Airways

17    Qantas Airways / Japan Airlines International

18    Singapore Airlines / Air New Zealand

19    Singapore Airlines / Asiana Airlines

20    Singapore Airlines / All Nippon Airways

21    Singapore Airlines / Malaysian Airlines

22    Singapore Airlines / United Airlines

23    Thai Airways / New Zealand

24    Thai Airways / China Airlines

25    Thai Airways / Japan Airlines International

26    Thai Airways / Malaysia Airlines

27    Thai Airways / United Airlines

28    United Airlines / Air New Zealand

1  United Airlines / All Nippon Airways

2  United Airlines / Asiana Airlines

3  United Airlines / Singapore Airlines

4  United Airlines / Thai Airways

5  ## CARTEL ACTIVITY MEETINGS

6  56.    Over the years, executives of Defendant airlines have attended

7  numerous meetings where cartel-like activity was accomplished.  Below are a few

8  examples of meetings where executives discussed and agreed on fuel surcharges.

9  57.    **The International Air Transport Association, Special Meeting,**

10 **Geneva, May 28, 2004:** Fuel costs were the main topic of this meeting and there

11 were agreements on how to add surcharges for fuel.  The Montreal Gazette

12 reported on June 1, 2004, that "member carriers of the International Air Transport

13 Association might raise international fares by as much as five percent to help cover

14 a surge in jet fuel costs.  The proposed fare increase of between two percent and

15 five percent was agreed at a May 28 meeting of the association, which represents

16 more than 270 airlines worldwide, an IATA spokesperson said."

17 58.    **The International Air Transport Association Annual General**

18 **Meeting and World Air Transport Summit, Singapore, June 6-8, 2004:** More

19 than 600 airline executives attended this annual summit.  Giovanni Bisignani,

20 IATA CEO said in a welcoming statement, "While record high fuel prices

21 challenge our profitability it is time to put our efforts toward rebuilding the

22 industry."  Immediately following this meeting on June 8, 2004 both Japan

23 Airlines International and All Nippon Airways filed applications with the Japanese

24 government to raise international passenger fares because of high fuel costs.  In a

25 news release announcing the Fuel Surcharge hike, Japan Airlines International

26 said:

27 > The application follows a special meeting of the members
> of the International Air Transport Association in Geneva,

28 > May 28, (2004) when a resolution was discussed to raise

---

COMPLAINT

19

1  fares in the wake of increased fuel prices. This resolution has now been adopted.

2  Japan Airlines International and All Nippon Airways were in lockstep on June 8,

3  2004, both announcing on that day that a five percent fuel Surcharge would be

4  going into effect, on the same day for both airlines, July 1, 2004.

5    59.    **2005 International Flight Services Association, Global Leadership**

6  **Conference – Asia Pacific, August 30 – September 1, 2005 Tokyo Japan:** This

7  meeting was labeled as "The Challenge of Change." Among the participants were,

8  Makoto Fukada, Managing Director and Senior Vice President International

9  Passenger, Japan Airlines; Sandra Pineau, Senior Director of Planning and Design,

10  Continental Airlines; Charles Grossrieder, a manager at Cathay Pacific Airways;

11  Nikom Raviyan, Vice President, Thai Airways; Sandeep Bahl, General Manager,

12  Northwest Airlines; Shigeru Miyata, Vice President, Japan Airlines; Kriengsakdi

13  Phatharacharukul, Director, Thai Airways; and Hee Won Jo, Senior Manager,

14  Asiana Airlines.

15    60.    **2nd Annual Asia Pacific & Middle East Aviation Outlook Summit**

16  **2006, December 5-6, 2005 Kuala Lumpur, Malaysia:** The theme of this meeting

17  was "Towards Best Practice: Maximizing Revenues and Minimizing Costs." On

18  the first day of the meeting, the guests included Dato Seri Bashir Ahmad, Malaysia

19  Airport's CEO; Willy Boulter, Commercial Director for Virgin Atlantic Airways;

20  and Stanley Kuppusamy, President, International Relations, Singapore Airlines.

21  Fuel surcharges were a topic of discussion.

22    61.    **Aviation Emergency Response 2006, AAP sponsored, September**

23  **19-21, 2006 Bangkok, Thailand:** This meeting was attended by international

24  airport officials and AAPA member executives. Meetings were held on increasing

25  revenues in the transpacific area by way of Fuel Surcharges and other financial

26  means.

27    62.    **3rd Annual Asia Pacific & Middle East Aviation Outlook Summit,**

28  **November 9-10, 2006 Singapore:** Participating in this meeting were executives

1  from most of the Defendant airlines, including Geoff Dixon, CEO of Qantas and

2  Huang Cheng Eng, Executive VP for Singapore Airlines.  One of the issues

3  presented and discussed was *Fighting Costs: Fuel prices and managing risk*

4  *exposure.*"

5       63.  **AAPA Forum, November 28-29, 2006 Bandar Seri Begawan,**

6  **Brunei Darussalam:** More than 120 aviation industry stakeholders attended this

7  meeting, organized by AAP.  At this meeting, Defendants and others discussed

8  surcharges.

9       64.  **Asia Pacific Aviation Summit, July 24-25, 2007 Sydney, Australia:**

10  This meeting was put on by the Asia Pacific aviation industry.  Some of the issues

11  discussed included the impact of the investigation by the U.S. Department of

12  Justice ("DOJ") into fare price fixing.  Another topic was "working together

13  efficiently" to diffuse the investigation of added surcharges.

14  **THE INVESTIGATION**

15       65.  The DOJ started investigating air passenger fuel surcharge

16  conspiracies worldwide in 2006, particularly transatlantic routes and transpacific

17  routes to and from the West Coast.  The DOJ announced on August 1, 2007 a $300

18  million settlement with British Airways and it cited passenger transatlantic routes.

19  In its news release, the DOJ said: "The Department also charged that between

20  August 2004 and February 2006, British Airways engaged in a conspiracy to

21  suppress and eliminate competition by fixing the Fuel Surcharge charged to

22  passengers on long-haul international flights, including flights between the United

23  States and the United Kingdom."

24       66.  The DOJ also announced a settlement with Korean Air for fare price

25  fixing on flights from the United States to Korea.  The DOJ stated that Korean Air

26  has "agreed to cooperate with the Department's ongoing investigation."  Korean

27  Air's unnamed co-conspirator in the passenger fare price fixing via Fuel

28  Surcharges was widely reported to be Asiana Airlines, which sought amnesty.

67.    Under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, a company can apply for leniency from the DOJ for its participation in antitrust activities.  Under the so-called Corporate Leniency Program, if a company comes forward with information about antitrust activities and cooperates in the investigation, it is eligible for conditional amnesty from prosecution.

68.    Both Korean Air and Asiana Airlines are among the top transpacific carriers in the world.  It was not the first time Korean Air and Asiana Airlines have been implicated in collusion and anticompetitive behavior.  The Korean Fair Trade Commission fined Korean Air and Asiana in 2001 for conspiring to set passenger air transportation services in Korea.

69.    In addition, several of the Defendants and unnamed co-conspirators have been identified as targets and or subjects in international investigations by the DOJ and the European Union into air cargo fuel surcharge price fixing.  The targets, many of which are also named in civil suits, include Defendant All Nippon Airways, Defendant American Airlines, Asiana Airlines, Defendant Japan Airlines, Korean Airlines, Defendant Northwest Airlines, Defendant Qantas Airways and Defendant United Airlines.  In both the air passenger and cargo investigations, Defendants and other airlines are accused of developing and participating in conspiracies to increase revenue by assessing inflated Fuel Surcharges.

## ADMISSIONS BY CO-CONSPIRATORS

70.    On August 13, 2007, Qantas Airways Chief Executive Officer Geoff Dixon announced that Qantas Airways would set aside $40 million to cover a potential fine in the United States as a result of Fuel Surcharges and price fixing in its freight division.  In a news release, Dixon was quoted as saying:

> On 1 August 2007, the U.S. Department of Justice announced that British Airways and Korean Air had agreed to plead guilty and pay separate US$300 million criminal fines for their roles in *conspiracies to fix prices of passenger and cargo flights.*  British Airways subsequently announced that US$200 million of its fine related to cargo.  Based on these developments, a

1  decision has been made to make a US$40 million (A$47 million) provision in the 2006/07 Financial Accounts.

2  Dixon also was quoted as saying:

3
4  We have investigated this issue thoroughly and are confident that the unacceptable conduct was limited to a small number of people.

5  75.    On October 6, 2007, the Japanese daily newspaper *Asahi Shimbun*

6  reported that Japan Airlines International would book a roughly $171 million

7  charge for potential fines form a global price fixing probe by U.S. and European

8  Union officials.  The newspaper said:

9
10
11
12  The company's move comes after the U.S. Justice Department fined British Airways PLC and Korean Air Lines Co. $300 million each in August for fixing the price of passenger and cargo flights with other airlines. The companies allegedly conspired to set fuel surcharges when oil prices rose.

## VIOLATIONS ALLEGED

13
14  76.    During the Class Period Defendants engaged in a continuing

15  agreement, understanding, and conspiracy in restraint of trade to artificially raise,

16  fix, maintain, and/or stabilize the prices of Passenger Air Transport and Fuel

17  Surcharges in the United States and throughout the world in violation of Section 1

18  of the Sherman Act, 15 U.S. § 1.

19  77.    In formulating and effectuating the alleged contract, combination, or

20  conspiracy, Defendants engaged in anti-competitive activities, the purpose and

21  effect of which were to artificially raise, fix, maintain, and/or stabilize the prices of

22  Passenger Air Transport and Fuel Surcharges.  These activities included the

23  following:

24  a.  agreeing to charge prices of Passenger Air Transport and Fuel

25  Surcharges at certain levels and otherwise to fix, raise, maintain,

26  and/or stabilize the prices of Passenger Air Transport and Fuel

27  Surcharges charged in the United States and throughout the world;

28

    b.  charging Passenger Air Transport and Fuel Surcharges at the agreed-upon rates;

    c.  signaling increases in the price of Passenger Air Transport and Fuel Surcharges by, *inter alia*, publicly announcing their increasing;

    d.  moving prices of their Passenger Air Transport and Fuel Surcharges in lockstep; and

    e.  announcing new Passenger Air Transport and Fuel Surcharges prices nearly simultaneously or within days of each other.

78.    During the Class Period, the Defendants increased, as a ratio to external costs – and profits – the Passenger Air Transport and Fuel Surcharges they charged. These increases in Passenger Air Transport and Fuel Surcharges cannot be explained by actual increases in fuel prices or supply/demand forces, but rather were the result of anticompetitive conduct.

79.    During the Class Period, Plaintiffs and members of the Class purchased Passenger Air Transport directly from Defendants (or their agents, subsidiaries, and/or controlled affiliates).

80.    The illegal combination and conspiracy alleged herein has had the following effects, among others:

    a.  Price competition in the pricing of Passenger Air Transportation and Fuel Surcharges thereon has been restrained, suppressed, and/or eliminated;

    b.  Price competition in the contracting of Passenger Air Transportation has been restrained, suppressed, and/or eliminated;

    c.  Prices for Passenger Air Transportation and Fuel Surcharges thereon charged by Defendants have been fixed, raised, maintained, and/or stabilized at artificially high, non-competitive levels; and

d.  Members of the Class have been deprived of the benefit of free and open competition.

## FRAUDULENT CONCEALMENT

81.   Throughout the relevant period, Defendants affirmatively and fraudulently concealed their unlawful conduct from Plaintiffs and the Class.

82.   Plaintiffs and the members of the Class did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as alleged herein until shortly before this litigation was commenced.  Nor could Plaintiffs and the members of the Class have discovered the violations earlier than that time because Defendants conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection.  The conspiracy was by its nature self-concealing.

83.   Plaintiffs and the members of the Class could not have discovered the unlawful conduct at an earlier date through the exercise of reasonable diligence because of Defendants' active and purposeful concealment of their unlawful activities.

84.   Defendants engaged in a successful, illegal price-fixing conspiracy with respect to Fuel Surcharges and other fees, which they affirmatively concealed, in at least the following respects:

a.  By agreeing among themselves not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme;

b.  By engaging in secret meetings and telephone calls in order to further their illicit Passenger Air Transportation and Fuel Surcharges cartel; and/or

c. By giving false and pretextual reasons for their pricing for Passenger Air Transportation and Fuel Surcharges thereon, and their increases, during the relevant period and by describing such pricing and increases falsely as being the result of external costs rather than collusion.

85.    As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiffs and the Class assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiffs and the members of the Class.

## **INJURY TO PLAINTIFFS AND THE CLASS**

86.    During the Class Period, Plaintiffs and the members of the Class, because of Defendants' antitrust violations, paid Surcharges and other fees they would not have paid absent such violations.

87.    As a result, Plaintiffs and the members of the Class it seeks to represent have been injured and damaged in their business and property in an amount to be determined according to proof.

88.    As a direct and proximate result of the illegal conspiracy, Plaintiffs and the members of the Class have been injured and financially damaged in their respective businesses and property, in that they have paid Fuel Surcharges and other fees during the Class Period they would not have paid in the absence of the illegal conspiracy.

## **PRAYER FOR RELIEF**

A.    The Court determine that the action may be maintained as a class action under Rule 23(a) and (b) (3) of the Federal Rules of Civil Procedure;

B.    The Court adjudge and decree that the conduct, combination and conspiracy alleged herein is a per se unreasonable restraint of trade in violation of Section 1 of the Sherman Act;

1    C.    Judgment be entered against Defendants, jointly and severally, and in

2 favor of Plaintiffs and the Class for damages as allowed by law as determined to

3 have been sustained by them;

4    D.    Each of the Defendants, successors, assigns, parents, subsidiaries,

5 affiliates and transferees, and their respective officers, directors, agents and

6 employees, and all other persons acting or claiming to act on behalf of Defendants

7 or in concert with them, be permanently enjoined and restrained from, in any

8 manner, directly or indirectly, continuing, maintaining or renewing the

9 combinations, conspiracy, agreement, understanding or concert of action, or

10 adopting any practice, plan, program or design having a similar purpose or effect in

11 restraining competition.

12    E.    The Court award Plaintiffs and Class attorneys' fees and costs, and

13 pre-judgment and post-judgment interest as permitted by law; and

14    F.    The Court award Plaintiffs and the Class such other and further relief

15 as may be necessary and appropriate.

16

17 DATED: February 21, 2008    O'DONNELL & ASSOCIATES PC

18

19    By: _____

20    PIERCE O'DONNELL
    Attorneys for Plaintiffs DAVID
21    FRANK MURPHY and DAVID
    KUO

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2    Plaintiffs hereby demand a trial by jury.

3

4    DATED:  February 21, 2008        O'DONNELL & ASSOCIATES PC

5

6                                     By: _____

7                                     PIERCE O'DONNELL
                                      Attorneys for Plaintiffs DAVID
8                                     FRANK MURPHY and DAVID
                                      KUO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID F. MURPHY et al. | | CASE NUMBER |
| | PLAINTIFF(S) | PBCV08-01214 ?? PJWx |
| v. | | |
| *SEE Attachment* | | |
| AIR NEW ZEALAND et al. | | **SUMMONS** |
| | DEFENDANT(S). | |
| *see Attachment* | | |

TO:    DEFENDANT(S):  <u>CHINA AIRLINES</u>

    A lawsuit has been filed against you.

    Within <u> 20 </u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, <u>O'Donnell & Associates</u>, whose address is <u>550 S. Hope Street, Suite 1000, Los Angeles, California 90071</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: <u>FEB 2 2 2008</u>

By: _____
    Deputy Clerk

    *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

1   O'DONNELL & ASSOCIATES P.C.
    PIERCE O'DONNELL (State Bar No. 081298)
2   GREGORY J. MANN (State Bar No. 200578)
    ROBERT M. PARTAIN (State Bar No. 221477)
3   550 South Hope Street, Suite 1000
    Los Angeles, CA 90071
4   Telephone: (213) 347-0290
    Fax: (213) 347-0299
5

6   Attorneys for DAVID FRANK
    MURPHY, DAVID KUO and the Class
7

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12   DAVID F. MURPHY, an individual,        CASE NO. _____
     DAVID KUO, an individual, and on
13   behalf of all others similarly situated,

14                                          **CLASS ACTION COMPLAINT
                 Plaintiffs,                FOR VIOLATIONS OF THE
15                                          SHERMAN ANTITRUST ACT
            v.                              15 U.S.C. § 1**
16

17   AIR NEW ZEALAND,                       **JURY TRIAL DEMANDED**
     ALL NIPPON AIRWAYS,
18   CATHAY PACIFIC AIRWAYS,
     CHINA AIRLINES,
19   EVA AIRLINES,
     JAPAN AIRLINES INTERNATIONAL,
20   MALAYSIA AIRLINES,
     NORTHWEST AIRLINES,
21   QANTAS AIRLINES,
     SINGAPORE AIRLINES,
22   THAI AIRLINES,
     UNITED AIRLINES,
23
                 Defendants.
24

25

26

27

28

**CONFORMED**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV08- 1214 R (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

===========================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
David F. Murphy
David Kuo

**DEFENDANTS**
Air New Zealand, All Nippon Airways, Cathay Pacific Airways, China Airlines, Eva Airlines, Japan Airlines, Malaysia Airlines, Northwest Airlines, Qantas Airlines, Singapore Airlines, Thai Airlines, United Air

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):
Los Angeles

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
O'Donnell & Associates
550 South Hope Street, Suite 1000
Los Angeles, California 90071
(213) 347-0290

Attorneys (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:** JURY DEMAND: ☑ Yes    ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes    ☐ No          ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. Section 1: Sherman Antitrust Act case involving illegal agreements among trans-pacific air carriers

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☑ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s):

**FOR OFFICE USE ONLY:** Case Number: **CV08-01214**

CV-71 (07/05)                    CIVIL COVER SHEET                    Page 1 of 2

**CONFORMED**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

---

**VIII(b).  RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No    ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)    ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                    ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                    ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                    ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

---

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
        Los Angeles

List the California County, or State if other than California, in which EACH named defendant resides.  (Use an additional sheet if necessary).
☐   Check here if the U.S. government, its agencies or employees is a named defendant.
        New Zealand, Japan, Hong Kong, Taiwan, Malaysia, Minnesota, Australia, Singapore, Thailand, Illinois

**List the California County,** or  State if other than California, in which EACH claim arose.  (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.
        Los Angeles

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _____    Date  Feb. 21, 2008

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

SCAN

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

David F. Murphy, et al.,

PLAINTIFF(S)

v.

AIR NEW ZEALAND, et al. (see Attachment A)

DEFENDANT(S).

CASE NUMBER

CV-08-01214 R (PJwx)

ALIAS
SUMMONS

TO:    DEFENDANT(S):  To The Above-Named Defendants

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, O'Donnell & Associates_____, whose address is 550 S. Hope Street, Suite 1000, Los Angeles, California 90071_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: 2/26/08

By: M. Hernan
Deputy Clerk

(Seal of the Court)
1196

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                SUMMONS

Attachment A

## **Defendants In *Murphy v. Air New Zealand***

Air New Zealand

All Nippon Airways

Cathay Pacific Airways

China Airlines

Eva Airlines

Japan Airlines International

Malaysia Airlines

Northwest Airlines

Qantas Airlines

Singapore Airlines

Thai Airlines

United Airlines

NAME, ADDRESS & TELEPHONE NUMBER OF ATTORNEY(S) FOR, OR, PLAINTIFF OR
DEFENDANT IF PLAINTIFF OR DEFENDANT IS PRO PER

Pierce O'Donnell (SBN 81298)
Gregory Mann (SBN 200578)
Robert Partain (SBN 221477)
O'Donnell & Associates
550 South Hope Street, Suite 1000
Los Angeles, California 90071
Tel: (213) 347-0290
Fax: (213) 347-0299

ATTORNEYS FOR:  Plaintiffs

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| David F. Murphy<br>David Kuo<br><br>                                    Plaintiff(s),<br><br>                    v.<br><br>Air New Zealand et al.<br><br>                                    Defendant(s) | CASE NUMBER<br><br>**CV08-01214** P PJW<br><br>CERTIFICATION AND NOTICE<br>OF INTERESTED PARTIES<br>(Local Rule 7.1-1) |

TO:     THE COURT AND ALL PARTIES APPEARING OF RECORD:

The undersigned, counsel of record for  Plaintiffs David F. Murphy and David Kuo
(or party appearing in pro per), certifies that the following listed party (or parties) has (have) a direct, pecuniary
interest in the outcome of this case.  These representations are made to enable the Court to evaluate possible
disqualification or recusal.  (Use additional sheet if necessary.)

|                    PARTY | CONNECTION |
|---|---|
| (List the names of all such parties and identify their connection and interest.) | |
| David F. Murphy | Plaintiff |
| David Kuo | Plaintiff |
| Air New Zealand | Defendant |
| All Nippon Airways | Defendant |
| Cathay Pacific Airways | Defendant |
| China Airlines | Defendant |
| Eva Airlines | Defendant |
| Japan Airlines International | Defendant |
| Malaysia Airlines | Defendant |
| Northwest Airlines | Defendant |
| Qantas Airlines | Defendant |
| Singapore Airlines | Defendant |
| Thai Airlines | Defendant |
| United Airlines | Defendant |

2/22/08
_____
Date

_____
Sign

Plaintiffs David F. Murphy and David Kuo
_____
Attorney of record for or party appearing in pro per

**NOTICE OF INTERESTED PARTIES**

CV-30 (12/03)

**CONFORMED**